IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHYLLIS LOHR and DAVID E. LOHR, )
  her husband, )
 )
    Plaintiffs, )
 )
        vs. ) CA No. 09-752
 )
UNITED FINANCIAL CASUALTY )
  COMPANY and PROGRESSIVE )
  INSURANCE COMPANY, )
 )
    Defendants. )

## MEMORANDUM OPINION

Pending before the Court are a series of inter-related pleadings, beginning with a Notice of Removal by Defendants United Financial Casualty Company and The Progressive Corporation[1] (collectively, "Progressive" or "Defendants.") In response to the Notice of Removal, Plaintiffs Phyllis and David Lohr (collectively, "the Lohrs" or "Plaintiffs") have filed a motion to remand this matter to the Court of Common Pleas for Fayette County where it was originally filed ("Pet. Remand," Doc. No. 8.) Defendants have also filed a motion to dismiss the Complaint in its entirety (Doc. No. 7) and Plaintiffs have filed a petition seeking leave to amend their complaint in order to delete the class allegations originally raised (Doc. No. 11.) For the reasons discussed below, Plaintiffs'

---

[1] According to Defendants, "Progressive Insurance Company," the second Defendant named in the Complaint, does not exist. Rather, the proper name of that defendant is "The Progressive Corporation." (Notice of Removal, Doc. No. 1, at 1.)

motion to remand is granted. Consequently, the remaining pleadings are dismissed for lack of jurisdiction by this Court.

I.   **INTRODUCTION**

   A.   Factual History[2]

   Effective June 7, 2006, United Financial Casualty Company issued a commercial auto insurance policy to David Lohr providing coverage on his 1994 Ford truck. (Complaint, Exhibit A, "the Truck Policy.") The Truck Policy included uninsured and under-insured motorist coverage of $35,000 per person or per accident. According to Plaintiffs, Mrs. Lohr was an "insured" under the terms of the Truck Policy and the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S.A. §§ 1701-1799.

   On July 23, 2006, the Lohrs were injured when a 1994 Jimmy in which they were riding was struck from behind by an under-insured motorist. (Complaint, ¶ 6, and Exhibit B.) That vehicle was insured under a different Progressive personal auto policy which provided coverage for injuries incurred as a result of an accident involving an uninsured or under-insured motorist only up to $15,000 per person and $30,000 per accident. Because Mrs. Lohr's damages were greater than the limits of the policy on the 1994 Jimmy, she sought additional coverage under the Truck Policy. (Plaintiffs' Response to Defendants' Memorandum of Law in Opposition to

---

   [2] Unless otherwise noted, the facts in this section are taken from the Complaint.

2

Plaintiffs' Petition to Remand, Doc. No. 15, at 1.)

A Progressive claims representative denied the under-insured motorist claim Mrs. Lohr made against the Truck Policy on April 30, 2008, stating that "coverage. . .is not provided for bodily injury sustained by any person while using or occupying: an auto. . . that is owned by, furnished to or available for the regular use of. . .a relative." (Complaint, Exhibit B.)

According to Plaintiffs, this so-called "Household Exclusion" is unenforceable under the facts pertaining to them because it conflicts with the express provisions of the MVFRL and violates public policy.

B.   Procedural History

Plaintiffs filed suit in the Court of Common Pleas of Fayette County Pennsylvania on May 8, 2009, seeking a declaratory judgment that (1) the Household Exclusion is unenforceable, and (2) Progressive has a duty to provide under-insured motorist coverage to Plaintiffs under the Truck Policy for the damages arising from the accident on July 23, 2006. In connection with this declaratory judgment, Plaintiffs also seek an order of court referring this claim to arbitration pursuant to the terms of the policy. (Complaint at 2.)  In the second part of the Complaint, Plaintiffs seek to represent a class of individuals described as:

> (1) all Pennsylvania citizens on the date of the filing of this complaint (2) who were injured in motor vehicle accidents since May 1, 2001; (3) who were insureds at the

>time of the accident under a Progressive motor vehicle policy (including auto, motorcycle or commercial policies) issued subject to the MVFRL; (4) who did not receive uninsured or under-insured motorist benefits from Progressive; and (5) who were ineligible for such benefits due to the Household Exclusion.

(Complaint, ¶ 20.)

Progressive filed a timely Notice of Removal on June 11, 2009, based on its contention that this Court has jurisdiction over the putative class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA.") Defendants then filed a motion to stay these proceedings pending the decision of the Pennsylvania Supreme Court in Erie Insurance Exchange v. Baker, a case which Progressive argued addresses the precise issue raised in Plaintiffs' Complaint herein, i.e., whether the Household Exclusion clause an insurance policy violates Section 1738 of the MVFRL. (Doc. No. 5.)  Progressive withdrew the motion to stay when the Supreme Court handed down its decision in Baker four days later (Doc. No. 6) and immediately filed a motion to dismiss this case as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6), contending that Baker supported their position that the Household Exclusion clause in an insurance contract is valid and enforceable.

In response, Plaintiffs filed a motion to remand the matter to the Court of Common Pleas, arguing that this Court did not have jurisdiction under CAFA.  They subsequently filed a petition for leave to file an amended complaint which would delete all the class

4

action allegations.

The parties have now fully briefed each of the pending motions. We begin with Defendant's motion seeking jurisdiction of this Court under the Class Action Fairness Act, a motion which is counterbalanced by Plaintiffs' motion to remand.

## II. APPLICABLE LAW

Unless expressly precluded by an Act of Congress, a civil action may be removed from state court to the federal district court for the district and division embracing the place where such action is pending, if that court would have had original jurisdiction over the claims. 28 U.S.C. § 1441(a). However, if the district court lacks subject matter jurisdiction over the claims, the case must be remanded to state court. See 28 U.S.C. § 1447(c) stating, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be* remanded." (Emphasis added.)

> Pursuant to CAFA,
>
> a federal district court has original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which. . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2).

This provision, however, applies only to class action suits in which the total number of class members 100 or more. See 28 U.S.C.

§ 1332(d)(5)(B). In determining the amount in controversy under 28 U.S.C. § 1332(d)(2), the claims of the individual class members are to be aggregated. 28 U.S.C. § 1332(d)(6).

Although CAFA itself is silent on the question, the United States Court of Appeals for the Third Circuit has determined that, as in ordinary removal cases, the burden of proof in establishing federal jurisdiction pursuant to CAFA is on the party seeking removal. Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006); *see also* Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007), *citing* Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) ("the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.") This includes the burden of establishing that all three criteria of CAFA are met, i.e., diversity of citizenship, a minimal amount in controversy of $5,000,000, and a class size of at least 100 members. Federico, id., *citing* Morgan, id.

"Generally speaking, the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed." Westmoreland Hospital Asso. v. Blue Cross of Western Pennsylvania, 605 F.2d 119, 123 (3d Cir. 1979). This court may, however, engage in factual analysis beyond the pleadings to determine if it has subject matter jurisdiction. Anthony v. Small Tube Mfg. Corp., 535

F. Supp.2d 506, 512 (E.D. Pa. 2007).

### III. ANALYSIS

  A. The Parties' Arguments For and
     Against Federal Jurisdiction under CAFA

According to Defendants in their Notice of Removal, all three criteria for federal jurisdiction under CAFA are met. First, Plaintiffs are citizens of Pennsylvania and Defendants are corporations organized under the laws of Ohio, with their principal places of business in Mayfield Village, Ohio. Plaintiffs do not dispute that there is diversity of citizenship between any plaintiff and any defendant, thereby satisfying the first CAFA requirement. See 28 U.S.C. § 1332(d)(2)(A).

Defendants further assert, based on an analysis of their records conducted through June 11, 2009, that the proposed class consists of at least 100 members and the amount in controversy, exclusive of interest and costs, but including attorneys' fees, exceeds $5,000,000. (Notice of Removal, ¶¶ 11-12.) However, Plaintiffs argue that the damages recoverable by the proposed class members would be less than $5,000,000 and the number of members less than 100. (Pet. Remand, ¶ 13.)

  B. Determining Federal Jurisdiction under CAFA

Before discussing the size of the putative class and the amount in controversy, it is important to identify the proper standard of proof to be applied where a defendant removes to

7

federal court a class-action complaint originally filed in state court and the plaintiff counters with a motion to remand. By coincidence, this Court has recently addressed this issue in detail in another putative class action case. *See* Lewis v. Ford Motor Co., 610 F. Supp.2d 476 (W.D. Pa. 2009). We will not reiterate the history of district courts in this Circuit attempting to resolve the apparently discordant lines of cases which address this question, Morgan v. Gay, *supra*, and Samuel-Bassett v. Kia Motors America, Inc., *supra*, but summarize only the clarification the Third Circuit Court of Appeals provided in Frederico. *See* Lewis, 610 F. Supp.2d at 482-484. As another court in this circuit has succinctly explained the holding of that case,

> According to Frederico, Morgan applies to cases in which the complaint specifically avers that the amount sought is less than the jurisdictional minimum. There, a defendant seeking removal must prove to a legal certainty that the plaintiff can recover the jurisdictional amount. Conversely, Samuel-Bassett applies to cases in which the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum. There, the case must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount.

Raspa v. Home Depot, 533 F. Supp.2d 514, 521-522 (D. N.J. 2007).

In their Complaint, Plaintiffs do not explicitly state an amount in controversy but allege only that "the damages suffered by each class member are the amount of uninsured or under-insured motorist benefits that should have been paid to the class member if the Household Exclusion did not apply." (Complaint, ¶ 23.) They

further allege that "if this action is certified as a class action, the number of class members who would recover uninsured or under-insured motorist benefits is less than 100, but can be determined from records maintained by Progressive."  (Id., ¶ 24.)

Because Plaintiffs have not explicitly limited the damages sought to an amount less than $5,000,000, we conclude this case does not fall into the scope of Morgan, but rather Samuel-Bassett. Frederico, 507 F.3d at 196-197 ("The distinction between a case governed by Morgan and a case governed by. . .Samuel-Bassett is crystal clear.  Morgan applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum. . . . Samuel-Bassett applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum.") Consequently, for this Court to retain jurisdiction, Progressive "must prove to a legal certainty that [Plaintiffs] can recover the jurisdictional amount."  Frederico, 507 F.3d at 197. In order to meet this standard, the defendant must "justify [its] allegations by a preponderance of the evidence." Id.  The preponderance of the evidence standard means "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the statutory minium]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Frederico, 507 F.3d at 196, defining "preponderance of evidence" to mean "proof to

a reasonable probability that jurisdiction exists."

As noted in <u>Lewis</u>, at this point the Court may consider evidence outside the Complaint which would be appropriate in addressing a motion for summary judgment, e.g., submissions related to Plaintiffs' motion to remand and to Defendants' removal notice. <u>Lewis</u>, 610 F. Supp.2d at 483-484. However, Progressive cannot rely on "tenuous inferences and assumptions about the amount in controversy to satisfy its burden." <u>Puelo v. Whirlpool Corp.</u>, CA No. 08-925, 2008 U.S. Dist. LEXIS 15646, *4 (D. N.J. Feb. 29, 2008) (internal quotation omitted.) While Defendants are not obligated to "research, state, and prove [Plaintiffs'] claims for damages," they must present "facts sufficient to establish that [Plaintiffs] would more likely than not recover more than the jurisdictional amount, assuming the failure of [Defendants'] affirmative defenses." <u>McCraw v. Lyons</u>, 863 F.Supp. 430, 434 (W.D. Ky. 1994).

C. <u>Defendants' Evidence</u>

In support of their contention that the class would include more than 100 members and that the amount in controversy is at least $5,000,000, Defendants offer a declaration prepared by a paralegal, Nicole Somrak. (Memorandum of Law in Opposition to Plaintiffs' Petition for Remand, Doc. No. 13, "Defs.' Opp. Memo," Exhibit A.) Briefly summarized, this declaration states:

- The data management system in which Defendants record information on claims made under their insurance policies contains data only on claims which are less than three

10

> years old.
>
> - Because data on Pennsylvania claims prior to approximately April 2006 have been archived and are not readily available, the statistics below are based only on three of the eight years of the putative class period.
>
> - The data management system cannot specifically identify claims which were denied under the Household Exclusion.
>
> - Progressive has assumed that claims which were closed within 30 days without payment were "very likely" to have been denied due to the Household Exclusion.
>
> - The search of Pennsylvania claims denied within 30 days yielded 4,199 claims, of which Progressive has reviewed 2,904 in detail.
>
> - The review of 2,904 claims has identified 53 potential claims members "with total applicable policy limits of $4,415,000.00."

Based on this declaration, Progressive mathematically extrapolates that a review of the records covering the entire eight-year class period (May 1, 2001, through May 8, 2009) would yield a class numbering at least 141 members with $11,773,333 in policy limits as the amount in controversy. (Defs.' Opp. Memo at 20-23.) We find Defendants' position to be based on some questionable assumptions and an overly-expansive estimate of the amount in controversy.

First, Defendants argue that even if the balance of the 4,199 claims from the period April 2006 through April 2009 which have not yet been examined yield no more class members, extrapolating the ratio of 53 class members to 4,199 claims over a three-year period would yield 141 members over an eight-year period. (Defs.' Opp.

Memo at 21.) While Defendants do not explain their mathematical reasoning, this number can be calculated by determining the average number of claims per year in the three-year period (approximately 1,400) and multiplying by 8 years (11,197), then multiplying by a factor of 1.26%, the percentage of qualifying claims for the three-year period (53/4199.) This calculation, of course, must be based on two unstated assumptions: first, the average number of claims per year for the period May 2001 through March 2006 is the same as the average per year for the period April 2006 through April 2009; and second, the percentage of claims denied is equal over the entire period. Defendants support neither of these assumptions by fact or argument. Moreover, the initial assumption that claims denied in 30 days or less were "very likely" denied due to the Household Exclusion is never explained or justified.

In addition, we question Defendants' calculation that the amount in controversy would be well over $5,000,000. As noted above, the 53 potential class members already identified are said to have "applicable policy limits of $4,415,000." But the damages sought in this matter are not the policy limits but rather the "amount of uninsured or under-insured motorist benefits that should have been paid to the class member if the Household Exclusion did not apply." (Complaint, ¶ 23.)

Plaintiffs have attached a copy of their United Financial Casualty Company policy to their Complaint, indicating that their

uninsured and under-insured motorist coverage is limited to $35,000 for each person or each accident. This is the amount they personally claimed against Progressive under the Truck Policy (Complaint, ¶ 9) as well as the amount described as the damages sought in the class allegations. It therefore appears Defendants' calculation based on the total amount of each policy would be irrelevant since the class members' damages would be limited to the amount of coverage available when the accident involved an uninsured and under-insured motorist.

If the Lohrs' uninsured/under-insured motorist coverage of $35,000 were typical and every class member could recover that amount, damages for 141 class members would total $4,935,000. However, according to Defendants' evidence, the average policy limit of the 53 putative class members already identified is $83,302 ($4,415,000/53.) By comparing the Lohrs' policy which provides $300,000 coverage total and $35,000 in uninsured/under-insured motorist coverage, it seems unlikely that a policy with total coverage of only $83,302 would include uninsured/under-insured motorist coverage in such a high amount. For example, if the average uninsured/under-insured motorist coverage were closer to the statutory minimum -- $15,000 per person or accident -- the damages sought by 141 plaintiffs would be approximately $2,115,000.

Defendants have provided no evidence as to the amount of uninsured and/or under-insured motorists coverage the 53 identified

potential class members had in place at the time of their accidents, although it might be reasonable to assume that the "face sheet notes" which Ms. Somrak reviewed would contain this information. But without such evidence, it is sheer speculation - rather than proof to a legal certainty -- that the damages would equal or exceed $5 million.

Defendants assume that attorneys' fees would also be added to this total, although Plaintiffs do not explicitly seek such fees in their Complaint. (Defs.' Opp. Memo at 21-22.) Although CAFA permits a court to consider such fees,[3] Defendants point to no provision in the Truck Policy which would make such payment mandatory. In fact, if the class plaintiffs were to succeed in this matter, the relief sought is reference of their claims to arbitration. (Complaint, ¶ 31.) Assuming the Truck Policy is typical of other Progressive insurance policies, under those circumstances, each party pays its own costs, expenses, and the fees of its own arbitrator and they share the cost of the third arbitrator. (See Complaint, Exhibit A, "Arbitration.") On the other hand, attorneys' fees are authorized by the MVFRL if the insurer is found to have unreasonably denied payment of benefits to the insured. See <u>Hinderliter v. State Farm Mut. Auto. Ins. Co.</u>, CA

---

[3] Attorneys' fees may be considered under CAFA. Twenty-seven to 30% of the amount of the judgment has been determined to be the median percentage recovery range for class actions resolved during a recent four-year period; the Court may use the higher percentage in its calculations. See <u>Frederico</u>, 507 F.3d at 199.

No. 07-272, 2007 U.S. Dist. LEXIS 91011, *7 (W.D. Pa. Dec. 11, 2007), *citing* 75 Pa. C.S.A. § 1798(b); *see also* Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) (the amount in controversy "necessarily" includes attorneys' fees "if such fees are available to successful plaintiffs under the statutory cause of action.") Again, however, we cannot predict what the total of those fees might be because we have no firm assumption about the amount of the underlying claims the plaintiff class might recover.

Defendants also argue that in post-CAFA class actions, the amount in controversy can be satisfied from either the plaintiff's or the defendant's perspective. If Plaintiffs were to prevail in this matter and the Household Exclusion invalidated, Progressive could incur over $7.7 billion in potential coverage requirements for which it has received no premiums, would have to rewrite all of its 517,403 Pennsylvania policies, and would need to notify all policyholders of the changes in coverage. (Defs.' Opp. Memo at 22-23.)

We recognize that Congressional intent in passing CAFA was to "expand substantially federal court jurisdiction over class actions" and that some courts have held that the "value of the matter in litigation" may be determined "either from the viewpoint of the plaintiff or the viewpoint of the defendant, . . .regardless of the type of relief sought." Yeroushalmi v. Blockbuster Inc., CA No. 05-2550, 2005 U.S. Dist. LEXIS 39331, *10-*11 (C.D. Cal. July

5, 2005) *quoting* Senate Judiciary Committee report at S. Rep. 109-14 at *42-44. However, such an expansive view of the "matter in controversy" definition would, in effect, allow an insurance company to meet the jurisdictional amount simply by claiming, as Defendants have done here, that the losses they would incur include the consequential damages associated with coverage changes for all their policyholders regardless of whether the class of plaintiffs included all policyholders or not. Moreover, such a "consequential damages" analysis contradicts the language of Frederico which provides that a case must be remanded "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount," not whether the defendant can show its potential damages are greater than the jurisdictional amount.

In sum, in order for the Court to find that Defendants have established by a preponderance of the evidence that Plaintiffs could, in fact, recover more than the jurisdictional amount, we would have to accept several unsupported assumptions and speculate on the amount of uninsured or under-insured motorist coverage each potential plaintiff would be entitled to recover. "[I]f the Court has to speculate, as the Notice of Removal and Complaint require this Court to do, Defendants have not met their burden." Puelo, 2008 U.S. Dist. LEXIS 15646 at *4. Therefore, we grant Plaintiffs' Motion to Remand and direct the Clerk of Courts to return this matter forthwith to the Court of Common Pleas for the County of

16

Fayette.  An appropriate Order follows.


August __25__, 2009                    _____
                                       William L. Standish
                                       United States District Judge